WAYNE E. COVELL *vs.* DEPARTMENT OF SOCIAL SERVICES.

No. 99-P-1115.

Barnstable. October 9, 2001. - May 23, 2002.

Present: LENK, COWIN, & McHUGH, JJ.

Further appellate review granted, 437 Mass. 1110 (2002).

*Abuse Prevention. Department of Social Services,* Registry of alleged perpetrators. *Administrative Law,* Substantial evidence. *Due Process of Law,* Administrative hearing. *Witness,* Credibility, Corroboration. *Evidence,* Hearsay.

Discussion of the legal context in which the Department of Social Services, following a report of abuse or neglect pursuant to G. L. c. 119, § 51A, and the substantiation of the report pursuant to G. L. c. 119, § 51B, places an alleged abuser's name in its registry of alleged perpetrators maintained under G. L. c. 18B, § 7(*b*), and G. L. c. 119, § 51F. [806-813]

No substantial evidence supported the decision of an administrative hearing officer of the Department of Social Services to list an alleged child abuser's name in the department's registry of alleged perpetrators, where unsubstantiated hearsay statements of the child delivered a year and one-half after the alleged events (there being no allegation that the events were repeated in the interim), and under circumstances suggesting a possibility of fabrication or exaggeration, were not genuinely corroborated by other evidence that would make the hearsay statements reliable. [813-816]

CIVIL ACTION commenced in the Superior Court Department on June 17, 1994.

Following review by this court, 42 Mass. App. Ct. 427 (1997), a motion for judgment on the pleadings was heard by *Richard F. Connon,* J.

*James R. McMahon, Jr.,* for the plaintiff.

*Ginny Sinkel,* Assistant Attorney General, for the defendant.

COWIN, J. Following the filing of a report of abuse or neglect pursuant to G. L. c. 119, § 51A, and the substantiation of the report pursuant to G. L. c. 119, § 51B, the Department of Social Services (department) placed the plaintiff's name in its registry of alleged perpetrators (registry) maintained under G. L. c. 18B,

§ 7(*b*), and G. L. c. 119, § 51F. The plaintiff sought review of the decision in accordance with the department's "fair hearing" procedures set forth at 110 Code Mass. Regs. §§ 10.00 et seq. (1993). A department hearing officer upheld the determination, and the plaintiff sought judicial review under G. L. c. 30A, § 14(7). The department's decision was affirmed by a judge of the Superior Court and the plaintiff appealed.

The events that brought about the listing of the plaintiff in the registry were reported to the district attorney. This resulted in the bringing of charges against the plaintiff of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B. The plaintiff was acquitted by a jury of those charges, an outcome which took place while his appeal from the Superior Court judgment in the administrative case was pending in this court. Accordingly, we remanded the matter to the department so that the agency could consider the effect of the criminal proceedings. See *Covell* v. *Department of Social Servs.*, 42 Mass. App. Ct. 427, 433 (1997).

The case was heard again before a different department hearing officer, but with the same result. The administrative determination was again affirmed by the Superior Court. The plaintiff again appeals, asserting in essence that (1) the department's decision is not supported by substantial evidence, and (2) his constitutional right to procedural due process has been violated. We hold that, in a proceeding which could, and did, culminate in the labeling by the government of an individual as a possible (or even likely) perpetrator of abuse or neglect of a child entrusted to his care, the concept of substantial evidence requires a level of evidence that was not present in these proceedings. Therefore, we reverse. Our disposition makes it unnecessary to reach the constitutional questions.

1. *The legal framework.* The department's decision that the plaintiff's name should be placed in the registry, and the sufficiency of the evidence on which such determination was based, can be evaluated only with an understanding of the legal context in which the administrative process takes place. The registry is maintained by the department as a part of the "central registry" authorized by G. L. c. 119, § 51F. See G. L. c. 18B, § 7(*b*). The central registry is a compilation of data regarding clients,

providers and others, as well as fiscal and administrative information, used by the department in carrying out its responsibilities. The registry of alleged perpetrators (registry) is a section of the central registry that identifies certain individuals believed to have been responsible for the abuse[1] or neglect of one or more children. See 110 Code Mass. Regs. § 4.36 (1996). Information from it may be disseminated for the purpose of screening applicants for employment with the department involving interaction with children or clients, including volunteers and student interns; applicants to become foster parents; and applicants to become adoptive parents. There may be access to the registry for the purpose of providing appropriate services to any child in the custody of the department or in connection with investigations of allegations of abuse and neglect. In addition, the commissioner of the department may, as a matter of discretion, authorize any other person to have access to the registry. See 110 Code Mass. Regs. § 4.38 (1996). The alleged perpetrator's listing in the registry is maintained for a period of seventy-five years unless ordered removed by an administrative or judicial determination. See 110 Code Mass. Regs. § 4.37 (1996).

There is a sequential process leading to placement of a name in the registry. It begins typically with the filing with the department of a report of abuse or neglect of a child. See G. L. c. 119, § 51A. The department, pursuant to G. L. c. 119, § 51B, investigates the allegations of the § 51A report. The department "supports" the report if it determines, based on its investigation, that there is "reasonable cause to believe"[2] that an incident of sexual abuse by a caretaker has taken place. 110 Code Mass.

---

[1] "Abuse" for this purpose is "the non-accidental commission of any act *by a caretaker* upon a child under age 18 which causes, or creates a substantial risk of physical or emotional injury, or constitutes a sexual offense under the laws of the Commonwealth or any sexual contact between a caretaker and a child under the care of that individual." 110 Code Mass. Regs. § 2.00 (1996) (emphasis in original). "Caretaker" is defined "broadly and inclusively to encompass any person who is, at the time in question, entrusted with a degree of responsibility for the child" who is the subject of the proceeding. *Ibid.* It is not disputed that the plaintiff was a "caretaker" at the times relevant in this case.

[2] "Reasonable cause to believe" is established by facts, knowledge or observations which tend to support or are consistent with the allegations of

Regs. § 4.32(2) (1996). A "supported" report does not lead automatically to the placement of a name in the registry; indeed, a "supported" report often will not identify the perpetrator. An alleged perpetrator is listed in the registry if three conditions are satisfied: (1) the allegations in the § 51A report are "supported"; (2) the allegations are referred to the district attorney, see G. L. c. 119, § 51B(4); and (3) there is "substantial evidence" that the alleged perpetrator was responsible for the child's abuse or neglect. 110 Code Mass. Regs. § 4.37 (1996). The department's regulations incorporate the definition of "substantial evidence" that appears in G. L. c. 30A, § 1(6), specifically, "such evidence as a reasonable mind might accept as adequate to support a conclusion."

Once an individual has been listed in the registry, he may exercise his right to an administrative appeal. 110 Code Mass. Regs. § 10.06(8) (1994). This introduces a proceeding conducted before a department hearing officer, which the department's regulations entitle, perhaps immodestly, a "Fair Hearing." Pursuant to 110 Code Mass. Regs. § 10.23 (1993), the department allocates to the listed individual the burden of proof by a preponderance of the evidence. In order to obtain a reversal of the decision that he be listed in the registry, the individual must prove that the department's decision or procedures relating thereto were not in conformity with department policies or regulations, or that the department acted without a reasonable basis or in an unreasonable manner resulting in substantial prejudice to the listed party. *Ibid.*

We must assume that these generalized references to the department's policies and procedures, and to the reasonableness of its actions, include a recognition that the department may lawfully list an individual in the registry only when there is "substantial evidence," as defined, that the individual was responsible for a child's abuse or neglect. See 110 Code Mass. Regs. § 4.37 (1996). Thus, it is at this point that some confusion creeps into the process. The department, pursuant to its

the § 51A report and which, viewed in light of the attendant circumstances and credibility of the persons providing information, would lead one to the conclusion that a child has been abused or neglected. 110 Code Mass. Regs. § 4.32(2) (1996).

own regulations, may not list an individual in the registry un-
less there is substantial evidence that he was in fact responsible
for the abuse or neglect of a child. That suggests that the depart-
ment has initially allocated the burden of proving the underly-
ing facts to itself, at least for its own internal purposes.
However, when the listed individual seeks an administrative
review of that internal determination, the department imposes
the burden of proof on that individual. Thus, it is unclear who
actually has the burden on the subject, and what that burden is.[3]
Obviously, it is permissible for the department to assign to an
appellant the task of demonstrating that the agency has commit-
ted an error of law, including that given findings are unwar-
ranted because not supported by substantial evidence. It is
something else entirely to thrust on the appellant under these
circumstances the burden of proving the relevant facts, i.e.,
proving that he is not a perpetrator of abuse or neglect. The
administrative hearing is an evidentiary hearing, suggesting that
the burden placed on the appellant is not merely a burden to
demonstrate error, but is a burden to produce evidence and to
persuade the fact finder of his innocence. This has significant
ramifications from the viewpoint of procedural due process,
although, for reasons stated below, we do not decide this case
on constitutional grounds.

Finally, should the listing of the individual in the registry be
upheld by the department's hearing officer, the individual may
seek judicial review in the Superior Court in accordance with
the provisions of G. L. c. 30A. The standards of review are set
forth in G. L. c. 30A, § 14(7). Review of department decisions
upholding listings in the registry will generally implicate the
standard contained in § 14(7)(*e*), i.e., that the substantial rights
of a party may not be prejudiced by an agency decision that is
unsupported by substantial evidence. In this regard, the weigh-
ing of evidence, including credibility determinations, is for the
hearing officer. See *Guarino* v. *Director of the Div. of Employ-
ment Security*, 393 Mass. 89, 92 (1984). But the reviewing

---

[3]Further uncertainty regarding allocation of the burden is engendered by
another regulation that provides that the department ordinarily shall present
first at the administrative hearing, 110 Code Mass. Regs. § 10.22 (1993),
thereby implying that the department has at least some burden of production.

court's decision on the question whether substantial evidence to support a finding is present must be made on the entire record, taking into consideration both what supports the challenged finding and what detracts from that support. See *Edward E.* v. *Department of Social Servs.*, 42 Mass. App. Ct. 478, 480-481 (1997).

2. *The administrative proceeding.* After the matter was remanded by this court, a second administrative hearing was conducted. There were two witnesses: the department investigator, who prepared the § 51B report "supporting" the allegations of abuse, and the plaintiff, who denied that any abuse had occurred. Neither the child nor the child's mother testified at the administrative hearing. Documentary evidence was also received, including, inter alia, the relevant § 51A and § 51B reports and a partial transcript of the criminal trial in the Barnstable District Court in which the plaintiff was acquitted of the charges (indecent assault and battery on a child under fourteen) arising out of the department's report to the district attorney.[4]

We summarize material findings of the hearing officer, which were either uncontested or warranted by the evidence, as well as certain additional testimony. When Linda[5] was three years of age, the plaintiff and Linda's mother were married. The plaintiff is not Linda's biological father. The mother bore four more children during her marriage to the plaintiff. The plaintiff purchased a store in June, 1991. He worked in the store, as did the mother, until the fall of 1992, when the mother stopped working prior to the birth of a child. Linda assisted the plaintiff on two or three occasions in June, 1992, at which times she operated the cash register and performed other odd jobs. In June, 1992, Linda was approximately twelve and one-half years of age. The relationship between Linda and her stepfather, which had previously been strained, became more positive while she worked at the store during that month.

The plaintiff purchased a new store in March, 1993. Linda worked there in April, 1993; visited her biological father during

---

[4]The portion of the criminal trial transcript that included the testimony of the child on direct examination apparently could not be located and was not part of the record before the hearing officer.

[5]A pseudonym.

that summer; and then worked in the new store twice per week until October, 1993. By the spring of 1993, the relationship between Linda and the plaintiff had again deteriorated, and, following Linda's visit with her father that summer, she and the plaintiff argued frequently. Both the plaintiff and the mother disciplined Linda. In September, 1993, she upset both the plaintiff and her mother by secretly attending a "slam dance" to which they had forbidden her to go.

In October, 1993, Linda told a friend that she had been sexually abused by the plaintiff. She also informed her school guidance counselor that the abuse had occurred about a year and one-half earlier. At the guidance counselor's suggestion, Linda also told her mother. Prior to October, 1993, Linda had not spoken of the events in question. The guidance counselor, a mandated reporter under G. L. c. 119, § 51A, filed a report of alleged abuse with the department. The case was assigned to a department investigator, see G. L. c. 119, § 51B, who interviewed Linda, her mother, the guidance counselor and the plaintiff.

Linda told the investigator that, on three Saturday evenings in 1992 when she was alone with the plaintiff at the store, the plaintiff placed his hand under her shirt, fondled her breasts, and placed his hand inside her underwear. Linda reported the same events to her mother and to the guidance counselor, and appears to have testified consistently at the criminal trial. The plaintiff denied that he had committed the acts in question. He stated that he did sit with Linda on the couch in the back room of the store; that they would sometimes give each other back rubs; and that he at times rubbed her neck on top of her clothing. He stated further that any incident that appeared inappropriate was only incidental contact.

The hearing officer upheld the "support" by the department of the § 51A report. We agree with that determination because such support requires only that there be "reasonable cause" to believe that an incident of abuse or neglect by a caretaker has occurred, see 110 Code Mass. Regs. § 4.32(2) (1996), an easily achieved determination which was permissible here. See *Care & Protection of Robert*, 408 Mass. 52, 63 (1990).

The hearing officer also upheld the department's listing of the

appellant in the registry. She found correctly that the first two conditions for such a listing, i.e., that the allegation of child abuse had been "supported" and that there had been a referral to the district attorney, 110 Code Mass. Regs. § 4.37 (1996), had been satisfied. She then turned to the third condition, specifically that there be substantial evidence that the plaintiff was responsible for the alleged abuse or neglect, *ibid.*, and determined that that condition had been satisfied as well. In this regard, she found that Linda's "recollection of the details [was] credible and reliable." Brushing aside the plaintiff's suggestion that Linda may have misrepresented the events a year and one-half later because she was angry at being disciplined, the hearing officer noted that the plaintiff "corroborated almost all of the details of [Linda's] story, excluding the actual touching and/or fondling which he continues to deny." On this basis, the hearing officer concluded that the record contained substantial evidence to support the conclusion that the plaintiff sexually abused Linda.

3. *Adequacy of the appellate record.* The department makes a half-hearted effort to avoid the whole issue by contending that the plaintiff's failure to request a transcript of the agency hearing precludes him from contending that the evidence was not sufficient to support the hearing officer's findings. The department is technically correct. While it is the agency's obligation to file an official record with respect to a judicial review of its proceeding, see G. L. c. 30A, § 11(6), under the version of Superior Court Standing Order 1-96 then applicable, the agency was not required to include a hearing transcript unless a party requested it and, ordinarily, paid for it.[6] In the present case, however, it is clear from the record what evidence was presented. Indeed, the parties do not disagree as to what the evidence was, only which version should be believed. The basis

---

[6]Effective November 1, 2000, after the Superior Court proceedings in this case, Superior Court Standing Order 1-96 was amended to state that an agency will include a hearing transcript in the official record unless the parties stipulate to portions of the record or provide an agreed statement of the case. Standing Order 1-96 was again amended, effective April 8, 2002, to restore to the plaintiff the obligation to provide a transcript when there are allegations that the agency decision "is not supported by substantial evidence or is arbitrary or capricious, or is an abuse of discretion."

of the department's case is understood. The record contains the relevant documentary evidence, as well as much of the transcript of the criminal trial. The hearing officer's findings also relate significant portions of the evidence. We observe that a party who challenges administrative findings on the ground that they are not supported by substantial evidence assumes a considerable risk that his appeal will misfire if he fails to provide an adequate evidentiary record for review. Nevertheless, on the record which is before us in this case, we are able to judge whether the listing of the plaintiff as an alleged perpetrator has adequate evidentiary support.

4. *Discussion.* The department concedes, as it must, that its administrative proceeding held to determine whether the plaintiff has been properly listed in the registry implicates due process considerations. It then points out that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976), quoting from *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965). See *Matter of Kenney*, 399 Mass. 431, 435 (1987). That formulation is correct as far as it goes; but here there must also be a relationship between the quality of the evidence presented to the tribunal and the kind of decision that the tribunal renders. What may be adequate to support findings on certain subjects will not of necessity be adequate to support findings on others.

This concept is captured by the definition of "substantial evidence" as "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6). 110 Code Mass. Regs. § 4.37 (1996). The conclusion to be reached dictates the kind of evidence on which a reasonable person would rely. The "reasonable mind" demands different levels of evidence depending on the significance of the finding to be made. Obviously, the amount and character of the evidence that we demand is not the same in deciding where to have dinner as it is in deciding whether to have life-threatening surgery. There is no abstract quantum of evidence that satisfies the "substantial evidence" test in all circumstances. What constitutes "substantial evidence" varies with the importance of the decision involved.

Here, the decision reached by the department is one of considerable significance. The plaintiff has been branded a likely sex offender against a youthful, and thus particularly vulnerable, victim who had been entrusted to his care. While access to the registry is limited, it can have a major impact on the listed individual. As indicated above, it is used to screen applicants for employment with the department who would have direct contact with clients or children; applicants to become foster parents; and applicants to become adoptive parents. It is used in connection with the provision of services to children in the department's custody, as well as for investigations of allegations of child abuse or neglect. The commissioner of the department may, as a matter of discretion, permit access to any other individual or group.[7] See 110 Code Mass. Regs. § 4.38 (1996). It follows that the decision to list an individual in the registry is hardly a trivial one, and the "substantial evidence" necessary to support such a determination must be defined accordingly.

The evidence supporting the department's decision in this case was exclusively hearsay. That by itself does not render it not "substantial." The so-called "legal residuum" rule (i.e., that, even given the relaxed evidentiary rules applicable in administrative proceedings, an agency's decision could not be based entirely on evidence inadmissible in courts) apparently embodied in *Sinclair* v. *Director of the Div. of Employment Security*, 331 Mass. 101, 103 (1954), has effectively been rejected in Massachusetts by *Embers of Salisbury, Inc.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 526, 530 (1988). The latter case referred to the line drawn in *Sinclair* not as a line "between evidence admissible in a court and evidence that is inadmissible because of the rules of evidence observed by courts," but as a line "between evidence having indicia of reliability and probative value and that which does not." *Ibid.* As we stated in *Edward E.* v. *Department of Social Servs.*, 42 Mass. App. Ct. at 480, "[t]he question before us is not whether the administrative decision was based exclusively upon uncor-

---

[7]Because any individual may obtain official confirmation or denial that he is listed in the registry, 110 Code Mass. Regs. § 4.38(3) (1996), it is entirely possible that some private employers will insist that job applicants provide evidence that they have not been listed.

roborated hearsay but whether the hearsay presented at the fair hearing was reliable." To that we add that reliability must be judged in relation to the significance of the decision being made.

In the present case, the sole evidence of abuse was Linda's statements that the abuse had occurred. She made the statements within a few days of each other to a friend, a guidance counselor, her mother, and a department investigator. Subsequently, she testified consistently at the criminal trial. The decision thus turned on the hearing officer's belief that Linda's disclosures were credible. Determinations of credibility are normally for the fact finder, see *Hotchkiss* v. *State Racing Commn.*, 45 Mass. App. Ct. 684, 691 n.7 (1998), and a reviewing court does not ordinarily make alternative findings of fact. *Id.* at 698.

Here, however, we do not see how the hearing officer could have judged Linda's credibility. Linda never testified before her. The child's only testimony was given at the criminal trial, after which the plaintiff was acquitted. It has been held in other contexts that an agency cannot evaluate the credibility of witnesses without observing their demeanor when testifying. See *Salem* v. *Massachusetts Commn. Against Discrimination*, 404 Mass. 170, 175 (1989); *Fox* v. *Commissioner of Rev.*, 51 Mass. App. Ct. 336, 342-343 (2001). In this case, the hearing officer attempted to judge Linda's credibility through the prism of the testimony of the department investigator, buttressed by the fact that Linda had told the same story to different people. That the investigator may have been credible when reporting the hearsay does not mean ipso facto that the declarant was credible or that the hearsay was reliable. Furthermore, statements "do not attain trustworthiness through a process of repetition." *Edward E.* v. *Department of Social Servs., supra* at 486.

To the extent that there was corroboration of Linda's statements at all, that corroboration consisted of her other consistent statements and of the plaintiff's testimony about "the events leading up [to] the [alleged] abuse," to which the hearing officer gave considerable weight. That Linda told essentially the same story to different people may be, at least on this record, more testimony to intelligence than it is testimony to

trustworthiness. With respect to the plaintiff's "corroboration," he admitted actions on his part that were not criminal, while steadfastly denying that he had engaged in any behavior which warranted censure. While the fact that the plaintiff agreed with Linda on certain activities may qualify as a theoretical form of "corroboration," it is not corroboration in the practical sense that it provides convincing support for Linda's accusations. Fairly examined, the record supporting the determination consists of the cold transcript of Linda's statements and little else.

It is not our intention to create a right of confrontation in these cases. See *White* v. *White*, 40 Mass. App. Ct. 132, 141 (1996). There are reasons why it may be in a child's best interest that she not testify. But the legitimacy of such concerns does not excuse the absence of substantial evidence of facts on which serious decisions are predicated. Often there will be evidence that genuinely corroborates a child's hearsay statements; or, put differently, there will be other indicia that the hearsay is reliable. Where, as here, such other indicia are absent, the decision cannot stand. We have in this case the unsubstantiated hearsay statements of a child delivered a year and one-half after the alleged events (there being no allegation that the events were repeated in the interim), and under circumstances suggesting a possibility of fabrication or exaggeration. Reasonable minds do not accept such evidence as adequate to support a conclusion of this consequence. See *Arnone* v. *Commissioner of the Dept. of Social Servs.*, 43 Mass. App. Ct. 33, 37 (1997).

5. *Disposition.* The judgment of the Superior Court is reversed. A judgment shall enter setting aside the department's decision and directing removal of the plaintiff's name from the registry.

*So ordered.*