Cratsley, J.
The plaintiff, Carol Wasserman (“Wasserman”), filed this appeal in the Superior Court seeking review of a decision of the Chelsea District Court on July 23, 2001, in which she had sought review of an administrative decision to suspend her license to operate a motor vehicle by the defendant Registrar of Motor Vehicles (the “RMV”), pursuant to the Chemical Test Refusal Law and regulations. G.L.c. 90, §24(l)(f), (g); 540 C.M.R. 11.01 et seq. Wasserman argues here that the Chemical Test Refusal Law and regulations violated her right to due process and her right to equal protection under Article 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution. She also asserts numerous statutory violations pursuant to the Administrative Procedure Act (the “APA”), the Chemical Test Refusal Law, and various regulations, including 501 C.M.R. 2.52, 501 C.M.R. 9.05(6), 540 C.M.R. 11.01, and 801 C.M.R. 1.03. Finally, Wasserman argues that the decision of the RMV hearing officer was in error and not supported by substantial evidence. On April 26, 2004 the RMV filed a Motion for Judgment on the Pleadings. Upon careful consideration of counsels’ oral arguments and memoranda, the RMVs Motion for Judgment on the Pleadings is ALLOWED.
FACTUAL BACKGROUND
All of the following facts are taken from the parties’ filings, briefs, and affidavits, and the administrative record.
*298 1. Wasserman’s Arrest
On May 4, 2001, Revere Police Department Officer Leo MacAskill (“Officer MacAskill”) was dispatched to investigate a report made to the Boston Police Department (the “BPD”) that a Red Mustang was “all over the road” on Route 1A heading into Revere. Officer MacAskill located a car matching that description and confirmed that the registration matched information provided by the BPD. He then observed that the car wove back and forth in the driving lane, and at one point entered the bus stop lane. He activated his blue lights and pulled the vehicle over.
Officer MacAskill approached the vehicle and detected a strong odor of alcohol while speaking to the driver, Carol Wasserman. The officer noted that Wasserman’s speech was slurred and her eyes were red. He asked her if she and been drinking and she replied yes, “a couple of martinis.” He then asked her if she would be willing to step out of the car and perform several sobriety tests and she agreed. At this point, Officer MacAskill was joined on the scene by Sergeant Picardi, Officer Malatesta, and Officer Chan. Wasserman was asked whether she had any medical problems which would hinder her ability to perform the tests and she stated that she did not. She did state, however, that she suffered from asthma and used an inhaler. When asked, she further stated that she understood the questions the officer was asking her.
Officer MacAskill then asked her to perform several sobriety tests, including the nystagmus eye test, the one-leg stand, and the nine-step heel-to-toe test. Wasserman failed each test. Based upon his observations and her failure of the tests, Officer MacAskill placed Wasserman under arrest for operating a motor vehicle under the influence of intoxicating liquor (“OUI”). Wasserman was then taken to the police station for booking. Wasserman disputes the following facts propounded by the defendant — that she was asked to submit to a chemical breath test (“breath test”) and that she refused.[1] Officer MacAskill subsequently prepared and submitted an electronic Report of Refusal to Submit to CheckTest (“Report of Refusal”) to the RMV. The officers also faxed a typed and signed Report of Refusal to the RMV.
Wasserman was then issued a temporary license that became valid twelve hours after issue and expired at the end of the fifteenth day following her arrest. She was also provided with a notice informing her that the RMV intended to suspend her license for 120 days based upon her refusal to consent to a breath test, which would take effect upon expiration of her temporary license. Finally, Wasserman was notified that she had a right to a hearing on the 120-day suspension pursuant to G.L.c. 90, §24.
2. Statutory and Regulatory Framework A. Administrative Procedure Act
General law chapter 30A, known as the Administrative Procedure Act (“APA”), regulates the adjudicatory proceedings of administrative agencies. The “broad, remedial purpose” of the APA is to “provide comprehensively for procedural due process in administrative proceedings.” Milligan v. Bd. of Registration of Pharmacy, 348 Mass. 491, 500 (1965). Because the RMV is an agency within the meaning of the statute, the standards contained therein apply to its hearings pursuant to G.L.c. 90, §24(1) (g), described below. Okongwu v. Stephens, 396 Mass. 724, 730 n.10 (1986); G.L.c. 30A, §1.
Adjudicatory proceedings of administrative agencies “shall afford all parties an opportunity for full and fair hearing.” G.L.c. 30A, §10. Pursuant to the statute, a full and fair hearing includes, inter alia, the right to notice of the hearing, a reasonable opportunity to prepare and present evidence and argument, the right to call and examine witnesses, introduce exhibits, to cross-examine witnesses who testify, and to submit rebuttal evidence. G.L.c. 30A, §10(l)-(3). All evidence presented “shall be offered and made a part of the record in the proceeding.” G.L.c. 30A, §10(4).
Reasonable notice of the time and place of the hearing shall be afforded to all parties, including sufficient notice of the issues involved “to afford them reasonable opportunity to prepare and present evidence and argument.” G.L.c. 30A, §11(1). Although the proceedings are not bound by the rules of evidence, privileges apply, and only evidence of the type on which “reasonable persons are accustomed to rely in the conduct of serious affairs” may be given probative effect. G.L.c. 30A, §11(2). Every party to an adjudicatory proceeding “shall have the right to call and examine witnesses, to introduce exhibits, to cross-examine witnesses who testify, and to submit rebuttal evidence.” G.L.c. 30A, §11(3). All such evidence submitted, including any records, reports, or documents, however, must be “made a part of the record in the proceeding.” G.L.c. 30A, §11(4). The agency then must make the record available, whether in written form or otherwise, and may require the parties to pay the reasonable cost of such records. G.L.c. 30A, §11(6). Finally, “each agency decision shall be in writing or stated in the record . . . [and] shall be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision . . .” G.L.c. 30A, §11(8).
“[A]ny person . . . aggrieved by a final decision of any agency in an adjudicatory proceeding . . . shall be entitled to . . . judicial review.” Upon review of a final agency decision, a court may affirm, remand, set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, “if it determines that the substantial rights of any party may have been prejudiced because the agency decision is — (a) [i]n violation of constitutional provisions; or (b) [i]n excess of the statutory authority or jurisdiction of the agency; or (c) [b]ased upon an error of law; or (d) [m]ade upon unlawful procedure; or (e) [unsupported *299 by substantial evidence; or (f) [u]nwarranted by facts found by the court on the record as submitted or as amplified ... , in those instances where the court is constitutionally required to make independent findings of fact; or (g) [arbitrary or capricious, and abuse of discretion, or otherwise not in accordance with law.” G.L.c. 30A, §14(7)(a)-(g).
B. The Chemical Test Refusal Law and Regulations
General laws chapter 90, section 24(l)(f), the Chemical Test Refusal law, states that “[w]hoever operates a motor vehicle upon any way . . . shall be deemed to have consented to submit to a [breath test] in the event that he is arrested for [an OUI]...” Chapter 90 directs police to inform any person arrested for an OUI (hereinafter “the operator”), that refusal to submit to a breath test will result in the suspension of her license to operate a motor vehicle for at least one hundred and twenty days. Id. If the operator nonetheless refuses to submit to a breath test, the police shall “(i) immediately . .. take custody of [the operator’s] driver license or permit . . . ; (ii) provide [the operator] . . . with a written notice of intent to suspend ...; [and] (iii) issue to [the operator] who refuses such test... a temporary driving permit. . .” Id.
Following the confiscation of the operator’s license, “[t]he police officer before whom such refusal was made shall immediately prepare a report of such refusal . . . under the penalties of perjury.” Id. “Each such report shall set forth the grounds for the officer’s belief that [the operator] had been operating a motor vehicle . . . while under the influence of intoxicating liquor, and shall state that [the operator] had refused to submit to such [breath test] when requested by such police officer to do so, such refusal having been witnessed by another person other than [the operator]. Each such report shall identify which police officer requested said [breath test], and the other person witnessing said refusal. Each such report shall be sent forthwith to the registrar along with a copy of the notice of intent to suspend . . . Said report shall constitute prima facie evidence of the facts set forth therein at any administrative hearing regarding any suspension specified in this Section.” Id.
Chapter 90 provides the operator with a hearing before the RMV within fifteen days of the suspension of her license. G.L.c. 90, §24(l)(g). Hearings are held on a walk-in basis. Id. The hearing officer compiles a record of the proceedings, and the scope of the hearing is limited to the following issues: “(i) did the police officer have reasonable grounds to believe that [the operator] had been operating a motor vehicle while under the influence of intoxicating liquor . . . , (ii) was [the operator] placed under arrest, and (iii) did [the operator] refuse to submit to such test or analysis.” Id. If the hearing officer finds on any one of these issues in the negative, the operator’s license shall be restored immediately. Id.
The hearing procedure is further governed and outlined in greater detail by 540 C.M.R. 9.01 et seq. and 540 C.M.R. 11.01 et seq. The operator has the right to submit both evidence and testimony. 540 C.M.R. 9.05(6); 540 C.M.R. 11.02(4). The operator may call witnesses on her own behalf and may subpoena any other witnesses she believes are necessaiy to the determination of the issues before the hearing officer. Id. She may also cross-examine those witnesses testifying against her. 540 C.M.R. 9.05(6). The record of the hearing must include “any testimony or evidence submitted by the operator,” but directs that “[i]t shall be the responsibility of the operator to include any and all relevant testimony in written form for the record.”[2] 540 C.M.R. 11.02(4). However, the hearing officer “may rely solely on official documents, reports, court records, transcripts or abstracts, or other documentary evidence” in making his determination. 540 C.M.R. 9.05(6).
If the hearing officer determines, as set forth by the Chemical Test Refusal law, that the refusal report meets the statutory requirements, “the burden is on the operator to show that one of the following factual issues .. . was in the negative: 1. did the police officer have reasonable grounds to believe that such person had been operating a motor vehicle while under the influence of intoxicating liquor ...; 2. was such person placed under arrest, and 3. did such person refuse to submit to such test or analysis.” 540 C.M.R. 11.02(5)(b).
Chapter 90 further provides that a person whose license has been suspended may file a petition for judicial review in the district court. G.L.c. 90, §24(l)(g). “Review by the court shall be on the record established at the hearing before the registrar. If the court finds that the [RMV] exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in ah arbitrary and capricious manner, or made a determination which is unsupported by the evidence in the record, the court may reverse the registrar’s determination.” Id.
3. The Hearing and Appeal
On May 17, 2001, Wasserman requested and received a walk-in hearing before the RMV. Wasserman was represented by counsel at the administrative hearing. The hearing officer, James Poliseno, reviewed the Report of Refusal that was submitted electronically to the RMV, the Report of Refusal that was signed and faxed to the RMV, Officer MacAskfil’s police report, and five affidavits submitted by Wasserman.[3] The affidavits were authored by Wasserman, her attorney and husband Brian Olmstead, Wasserman’s physician Sharon N. Barrett, and Wasserman’s friend and dinner companion on the night of her arrest Iris W. Davis.
Wasserman’s affidavit, which is supported by facts recited in the other affidavits submitted by her, states that during her drive home on May 4, 2001, she experienced blurred vision, a loss of coordination, *300 disorientation, loss of motor control, an inability to record what was said and done around her, and short-term memory loss. At the hearing, Wasserman argued that these symptoms, which were caused by an adverse reaction to her prescription medication neurontin, prevented her from making a voluntary, knowing, and intelligent decision to refuse take the breath test. She also argued that her right to counsel was violated when she was asked to take the breath test prior to the arrival of her attorney.
On May 21, 2001, the hearing officer upheld the suspension of Wasserman’s license based upon her ■ refusal to take a breath test. He credited Officer MacAskill’s report and found that the officer had reasonable grounds to believe that Wasserman was operating a motor vehicle under the influence of alcohol and that she had been arrested. He further found, relying on the reports submitted by the officers, that Wasserman had refused to submit to a breath test. Finally, citing Commonwealth v. Brazelton, 404 Mass. 783 (1989), the hearing officer rejected Wasserman’s claim that the police violated her right to counsel by not waiting for her attorney to arrive prior to asking her to take or refuse a breath test.
On May 25, 2001, Wasserman appealed the RMFs decision to the Chelsea District Court pursuant to G.L. 90, §24. In addition to the record below, the District Court Judge (Brant, J.) allowed Wasserman to enter into evidence a blank Form A Statutory Rights and Consent Form (“Form A”) which Wasserman alleges the officers were required to complete, but did not. He also allowed her to put into evidence the electronic and typed Reports of Refusal which were completed by officers.[4] In her District Court brief, Wasserman raises due process claims with respect to her right to an attorney prior to being asked to take a breath test and with respect to the administrative hearing process itself. On July 5, 2001, the District Court Judge upheld the decision of the RMV hearing officer. Judge Brant concluded that there was adequate support in the record to support the hearing officer’s decision and found “no violations of due process in the procedures before the [RMV].”
Wasserman filed this Superior Court appeal from the Chelsea District Court on July 23, 2001. Wasserman’s license was subsequently reinstated on September 17, 2001. Her criminal case was then resolved on November 30, 2001, when the Chelsea District Court (Darling, J.) held that Officer MacAskill lacked reasonable suspicion to stop Wasserman and suppressed all observations, statements, and other evidence in the case.[5]
DISCUSSION
I. Procedural Posture & Standard of Review
The instant appeal was filed pursuant to G.L.c. 231, §97 which allows parties “aggrieved by the judgment of a district court in a civil action which could not have been removed to the superior court” to appeal to the superior court thereafter. Section 97 appeals are then “tried and determined as if originally entered [in the superior court].” Id. A trial de novo in the superior court, however, is not the appropriate vehicle for Wasserman’s appeal. See Godfrey v. Chief of Police of Wellesley, 35 Mass.App.Ct. 42, 43-45 (1993). Where the substance of the plaintiffs claim involves a decision of an agency that has conducted a proceeding that is quasi-judicial in nature, “but not according to the course of common law,” her sole remedy in superior court is an “action in the nature of certiorari” pursuant to G.L.c. 249, §4. Id. See, e.g., Carney v. City of Springfield, 403 Mass. 604, 605 (1983). The proper vehicle for resolution of petitions for judicial review brought pursuant to G.L.c. 249, §4, is motion for judgment on the pleadings. Drayton v. Comm’rofCorr, 52 Mass.App.Ct. 135, 136 n.4 (2001); Mass.RCiv.P. 12(c).
An action in the nature of certiorari, however, does not provide “an additional or alternative avenue of appellate review.” Cumberland Farms, Inc. v. Planning Bd. of Bourne, 56 Mass.App.Ct. 605, 607 (2002). The Court will not exercise its power to remedy “mere technical errors that have not resulted in manifest injustice.” Id., citing Massachusetts Prisoners Ass’n Political Action Comm. v. Acting Governor, 435 Mass. 811, 824 (2002). “The purpose of the certiorari procedure is to provide a remedy, where none would otherwise exist . . .” Id., citing Drayton, 52 Mass.App.Ct. at 140. Therefore, the Court will correct only those substantial errors of law that are apparent on the record and adversely affect the material rights of the plaintiff. See also Fire Chief of East Bridgewater v. Plymouth County Retirement Bd., 47 Mass.App.Ct. 66, 69 (1999).
II. Constitutional Claims
Wasserman makes five constitutional claims under Article 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution, concerning the initial removal and later suspension of her license to operate a motor vehicle pursuant to the Chemical Test Refusal Law and regulations.[6],[7] G.L.c. 90, §24(l)(f), (g); 540 C.M.R. 11.01 et seq. First, Wasserman argues that her refusal to take the breath test can be effective against her only if her refusal was voluntaiy, knowing, and intelligent. Second, she argues that she was deprived of her right to be confronted by the evidence against her. Third, she argues she was deprived of her right to counsel. Fourth, she argues that procedural errors during the hearing deprived her of her constitutional rights to due process. Fifth, she argues that she was denied the protections of a full and fair hearing as afforded to other citizens facing license suspension before the RMV pursuant to 540 C.M.R. 9.01 et seq., also promulgated pursuant to G.L.c. 90. Each argument is addressed below.
*301 A. Substantive Due Process
First, Wasserman argues that her rights to substantive due process under Article 12 and the Fourteenth Amendment were violated when the hearing officer failed to inquire whether her refusal to take the breath test was voluntary, knowing, and intelligent.[8] See Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991), cert, denied, 502 U.S. 879 (1991) (where defendant challenges the state’s conduct as inadequate, rather than the adequacy of the procedure, due process claims examined under rubric of substantive due process). Substantive due process claims may be proved by two theories.[9] See Cruz-Erazo v. RiveraMontanez, 212 F.3d 617, 622 (1st Cir. 2000). A plaintiff may either “demonstrate a deprivation of an identified liberty or property interest protected by” Article 12 or the Fourteenth Amendment, or she may prove that the state conduct in question “shocks the conscience.” Id., citing Brown v. Hot, Sexy & Safer Productions, Inc., 68 F.3d 525, 531 (1st Cir. 1995). Because Wasserman’s claim does not specify any particular constitutionally protected interest in a voluntary, knowing, and intelligent refusal to take the breath test, the Court applies the second test.
Substantive due process prevents the government from engaging in conduct that “shocks the conscience,” or interferes with rights “implicit in the concept of ordered liberty.” United States v. Salerno, 481 U.S. 739, 746 (1987) (internal citations omitted). “In substantive due process analysis, the nature of the individual interest at stake determines the standard of review that courts apply when deciding whether a challenged statute meets the requirements of the due process clause.” Aime v. Commonwealth, 414 Mass. 667, 673 (1993), citing Salerno, 481 U.S. at 748-51. “Where a right deemed to be ‘fundamental’ is involved, courts ‘must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation,’ and typically will uphold only those statutes that are narrowly tailored to further a legitimate and compelling governmental interest.” Id. (internal citations omitted). “If a statute does not infringe on a fundamental right, courts will apply a less exacting standard of review whereby a challenged statute will pass constitutional muster under the due process clause if it ‘bears a reasonable relation to a permissible legislative objective.’ ” Aime, 414 Mass, at 673-74, citing Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 268 (1992), quoting Pinnick v. Cleary, 360 Mass. 1, 14 (1971).
In the present case, however, a substantive due process analysis is a meaningless inquiiy. An individual arrested for operating under the influence of intoxicating liquor has no constitutional right to refuse a breath test.[10] See Commonwealth v. Davidson, 27 Mass.App.Ct. 846, 848 (1990). “The right of refusal stems from the statute, which requires that a test not be conducted without his consent.” Id. The voluntary, knowing, and intelligent standard “applies only to [an individual’s] ‘consent’ to the actual relinquishment of [a] constitutional right.” Id. (emphasis in the original), citing Commonwealth v. Deeran, 397 Mass. 136, 141 (1986). Given its statutory origin, therefore, the Chemical Test Refusal Law does not require consent or refusal in accordance with the voluntary, knowing, and intelligent standard applicable to waivers of constitutional rights. Davidson, 27 Mass.App.Ct. at 849 (defendant who was deemed too intoxicated to voluntarily, knowingly, and intelligently waive his Miranda rights could consent to a breath test pursuant to G.L.c. 90, §24). This Court therefore holds that no police department or officer must initially determine an arrestee’s mental competence to rationally comprehend the test and voluntarily decide to take it before proceeding to administer the breath test. Law enforcement would be brought to a standstill and impossible, and/or irrelevant determinations would be required if such were the law for drunken driving.
Second, Wasserman argues that (a) the failure of the RMV to produce the police officers at the hearing, (b) the requirement that all testimony elicited by the operator be submitted to the hearing officer in written form, and (c) the regulatory grant of prima facie status to the Refusal Report, all infringe on her constitutional right to be confronted by the evidence against her. Wasserman, however, improperly merges the guarantees of procedural due process in a civil administrative proceeding with the standards employed in a criminal trial.
The confrontation clause of the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right “to be confronted with witnesses against him.” In a criminal trial, submission of evidence by a non-testifying witness against the defendant violates this right. See Commonwealth v. Dias, 405 Mass. 131, 135 (1989). No similar right is afforded parties in a civil proceeding of any kind. Coveil v. Dep’t of Social Services, 439 Mass. 766, 788 (2003); Town of Reading v. Murray, 405 Mass.App.Ct. 415, 418 (1989). The RMV, therefore, was under no constitutional obligation to produce the police officers for the purpose of live testimony, to allow her to avoid the requirement of offering testimony without a written record of such testimony, or to place the burden exclusively on the Commonwealth.[11]
The Court finds no substantial errors of law with respect to the plaintiffs substantive due process rights that are apparent on the record and adversely affect the material rights of the plaintiff. Defendant’s Motion for Judgment on the Pleadings as to this claim in Count I of the plaintiffs Complaint is allowed.
B. Procedural Due Process 1. Pre-Suspension Right to Counsel
Wasserman’s argues that she was deprived of her right to counsel under Article 12 and the Fourteenth *302 Amendment when she was required to decide whether to take or refuse a breath test before her attorney arrived. This argument is without merit. The Supreme Judicial Court held in Commonwealth v. Brazelton, unequivocally, that the moment at which a person must decide whether to take or refuse a breath test is not a critical stage in the criminal process. 404 Mass. 783, 785 (1989). The Court concluded that a defendant has no right to counsel under either Article 12 or the Fourteenth Amendment with respect to the decision to take or refuse the breath test.[12] Id. Wasserman argues that relief is nonetheless merited “as a matter of fundamental fairness” where, as here, she suggests, police officers “purposefully interfere(d) with a defendant’s access to a specific attorney who want[ed] to confer with the defendant and who the police [knew] represented] the defendant.” Commonwealth v. Mencoboni, 28 Mass.App.Ct. 504, 506 (1990). However, the record contains no evidence that the officers in the instant case delayed or in any way interfered with Wasserman’s right to counsel. The mere fact that officers did not wait for her attorney to arrive prior to inquiring whether she would take a breath test does not offend traditional notions of fundamental fairness for this type of prompt statutorily required law enforcement procedure.
2. Full and Fair Post-Suspension Hearing
Wasserman also argues that procedural errors during the hearing violated her rights under Article 12 and the Fourteenth Amendment.[13] Without question, the “opportunity to be heard at a meaningful time and in a meaningful manner” is fundamental to procedural due process analysis. Matthews v. Eldridge, 424 U.S. 319, 333 (1976). Due process is not a rigid concept; procedural protections vaiy “as the particular situation demands,” Matthews, 424 U.S. at 334, citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972), because “there must also be a relationship between the quality of the evidence presented to the tribunal and the kind of decision that the tribunal renders.” Coveil v. Dep’t of Social Services, 54 Mass.App.Ct. 805, 813 (2002). “What may be adequate to support findings on certain subjects will not of necessity be adequate to support findings on others.” Coveil, 54 Mass.App.Ct. at 813.
An administrative hearing need not be “elaborate.” Cleveland Bd. of Educ. v. Loudermill 470 U.S. 532, 545 (1985). Something less than a full evidentiary hearing is often sufficient prior to final adverse administrative action. Id. With this in mind, the Court looks to the following factors to determine whether sufficient process was afforded in the present case: (1) “the private interest that will be affected by the official action”; (2) “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards”; and (3) “the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” Matthews, 424 U.S. at 335.
1. Private and Governmental Interests
Wasserman’s interest is the continued possession and use of her license while her OUI prosecution is pending. Upon determination by the RMV that she refused a breath test following her arrest for an OUI, Wasserman’s license was suspended for 120 days.[14] This loss is by no means insignificant given the average individual’s daily need for transportation. It is not as significant, however, as the Commonwealth’s interest in public safety and preservation of evidence in cases where individuals have been stopped and arrested for operating under the influence. See generally Mackey, 443 U.S. at 17-18. See also Commonwealth v. Luk, 421 Mass. 415, 425 (1995) (discussing the remedial purpose of the Chemical Test Refusal Law).
2. Risk of Erroneous Deprivation
The thrust of Wasserman’s argument properly focuses on the risk of erroneous deprivation. She argues that she was deprived of her right to cross-examine witnesses against her both because the RMV did not produce the police officers at the hearing and because she was required to provide the testimony of witnesses she wished to call in writing. See G.L.c. 90, §24(1) (f); 540 C.M.R. 11.02(5)(b). She further argues that the regulatoiy practice of giving the refusal report prima facie status if the hearing officer determines that the refusal report meets the statutory requirements, thereby placing the burden on her to prove a negative, deprives her of her right to be confronted by the evidence against her. 540 C.M.R. 11.02(5)(b). The question presented, therefore, is whether something less than a full evidentiary hearing prior to the loss of a license to operate a motor vehicle, as in this case, is sufficient to alleviate the risk of erroneous deprivation.
As described above, the RMVs administrative hearing is an abbreviated procedure designed to resolve only three issues of fact: “(i) did the police officer have reasonable grounds to believe that [the operator] had been operating a motor vehicle while under the influence of intoxicating liquor . . . , (ii) was [the operator] placed under arrest, and (iii) did [the operator] refuse to submit to such test or analysis.” G.L.c. 90, §24(l)(g). In order to accomplish this task, G.L.c. 90, §24(1)(f) and 540 C.M.R. 11.02(5) (b) provide streamlined procedures. Hearings are held on a walk-in basis within fifteen days of suspension and the hearing officer is directed to compile a record of the proceedings. G.L.c. 90, §24(l)(g). An operator has the right to submit evidence and testimony, to call any witnesses on her own behalf as well as subpoena any other witnesses she believes are necessary, and may cross examine those testifying against her. 540 C.M.R. 9.05(6); 540 C.M.R. 11.02(4).
First, as stated above, Wasserman had the right to subpoena the arresting officers, but declined to do so. *303 540 C.M.R. 9.05(6); 540 C.M.R. 11.02(4). There is no indication that requiring Wasserman to request the presence of the police officers at the hearing will increase the risk of erroneous deprivation. Although coordinating the schedule of the officers with that of all other parties to the hearing is a challenge, it is an ever-present hurdle in today’s courts and does not rise, in my view, to the level risking an erroneous deprivation of rights. Moreover, a constitutional deprivation of process will not be found where the proponent of those rights fails to attempt to exercise them.
Second, although it is no doubt a challenging task to provide written testimony for the administrative record, this Court does not find that it increases the risk of erroneous deprivation. To the contrary, the submission of testimony in written form serves to preserve the sum and substance of what was presented before the hearing officer for any appeal to the District Court. See New Bedford Gas & Edison Light Co. v. Assessors of Dartmouth, 368 Mass. 745, 751 (1975) (“summary of evidence contained in the board’s ‘Findings of Fact and Report’ is no substitute for a transcript”). Nor does the burden of providing such written testimony fall too heavily on the plaintiff. The regulations require the RMV to provide forms “for witnesses to transcribe their testimony to submit it for inclusion in the record, and shall provide reasonable assistance to facilitate such transcription, should it be requested by the operator.” 540 C.M.R. 11.02(4). “The [RMV] shall also allow the operator to have the proceeding transcribed or recorded by a court reporter, at the operator’s own expense, if he or she so chooses.” Id. See also 540 C.M.R. 9.05(3) (‘The applicant may record the hearing at his or her own expense by any means he or she chooses that will not substantially interfere with the proceedings”). The right to procedural process does not include a right to be free from some inconvenience and cost.
Third, Wasserman argues that the Chemical Test Refusal Law and regulations, which shift the burden to the operator during the hearing, deprives her of her right to be confronted with all of the evidence against her. At the hearing, the Report of Refusal prepared by the police officers “shall constitute prima facie evidence of the facts set forth therein.” G.L.c. 90, §24(l)(f). “[T]he burden is on the operator [therefore] to show that one of the . . . factual issues . . . was in the negative: 1. did the police officer have reasonable grounds to believe that such person had been operating a motor vehicle while under the influence of intoxicating liquor . . . ; 2. was such person placed under arrest; and 3. did such person refuse to submit to such test or analysis.” 540 C.M.R. 11.02(5)(b). Wasserman argues, that giving the Refusal Report prima facie status without requiring the officers to testify violates her constitutional right to procedural due process.
Given the extremely narrow scope of inquiry, and the fact that the proceeding is civil in nature, this Court does not find that the burden shifting scheme laid out in G.L.c. 90, §24(l)(f) and 540 C.M.R. 11.02(5)(b) increases the risk of erroneous deprivation. Burden shifting is a common practice in civil matters. For example, in employment discrimination claims, once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a nondiscriminatory reason for its actions. Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116-18 (2000); Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 440-41 (1995). If the defendant provides such a reason, the burden shifts back to the plaintiff to demonstrate that the defendant’s reason is mere pretext. Id.
Similarly, in the present case the burden shifts to the operator to negate one of the three facts presented in the prima facie case only if the judge finds that the Report of Refusal meets the statutory requirements of the Chemical Test Refusal Law. 540 C.M.R. 11.02(5)(b). The operator need only disprove one of three facts; (1) that the police officer had reasonable grounds to believe that she had been operating a motor vehicle while under the influence of intoxicating liquor; (2) that she was arrested; and (3) that she refused a breath test. The final determination of the hearing officer is subject to judicial review in the District Court, upon which review a judge may find that the hearing officer’s determination was unsupported by the evidence in the record. G.L.c. 90, §24(l)(g); 540 C.M.R. 11.02(5)(b).
Applying the appropriate standard under Matthews v. Etdridge, 424 U.S. at 335, this Court finds that the risk of erroneous deprivation is not increased by requiring the operator to subpoena the reporting police officers if he or she wishes, by requiring that the operator provide all testimony offered in writing to the court, and/or by shifting the burden to the operator once the officers have established a prima facie case. Nor is there a constitutional or legal problem from requiring all of them together. This Court finds no substantial errors of law with respect to the plaintiffs procedural due process rights that are apparent on the record and adversely affect the material rights of the plaintiff. Defendant’s Motion for Judgment on the Pleadings as to this claim in Count I is allowed.
C. Equal Protection
Wasserman’s final constitutional claim alleges that she was denied the protections of a full and fair hearing as afforded to other citizens facing license suspension before the RMV, pursuant to 540 C.M.R. 9.01 et seq., also promulgated pursuant to G.L.c. 90, in violation of her right to equal protection under Article 12 and the Fourteenth Amendment.[15] Wasserman has failed to assert that she is a member of any suspect class or that the provisions of either G.L.c. 90 or 540 C.M.R. 9.01 et seq. infringe on any of her fundamental personal rights. As such, “the [statute and regulations] will be upheld against an equal pro *304 tection argument as long as [they are] rationally related to the furtherance of a legitimate State interest.” Chebacco Liquor Mart, Inc. v. Alcoholic Beverages Control Comm’n, 429 Mass. 721, 722 (1999) (rational to exempt liquor stores within 10 miles of Vermont and New Hampshire borders from the state’s Sunday closing law).
540 C.M.R. 9.01 et seq. applies to discretionary hearings involving the “suspension, revocation or reinstatement of any license, registration, certificate, or privilege issued or allowed under G.L.c. 90 or G.L.c. 90D.” Chapter 90 encompasses the regulation of all motor vehicles and aircraft and chapter 90D regulates motor vehicle certificates of title. Within these chapters, the regulated activity varies widely from serious injury caused by a driver operating a motor vehicle under the influence of intoxicating liquor to the regulation of the location and height of airports. Id. It cannot be said, therefore, that it is irrational to provid e different types of hearings for different kinds of infractions under these laws, particularly in the case of the G.L.c. 90, §24(l)(f), (g), the Chemical Test Refusal Law, where the scope of inquiry is narrow (as discussed above) and the penalty modest (license suspension for 120 days).
Therefore this Court finds no substantial errors of law with respect to the plaintiffs right to equal protection under the law that are apparent on the record and adversely affect the material rights of the plaintiff. Defendant’s Motion for Judgment on the Pleadings as to this claim in Count I is allowed.
III. Statutory Claims
Wasserman argues that 540 C.M.R. 11.02, which regulates the hearing at issue, is invalid because it violates the provisions of the APA; the Chemical Test Refusal Law, 501 C.M.R. 2.52, 501 C.M.R. 9.05(6); and 801 C.M.R. 1.03. She also argues that the hearing officer’s decision was insufficient as a matter of law pursuant to the APA. Both arguments are addressed below.
A. 540 C.M.R. 11.02
Wasserman argues that 540 C.M.R. 11.02, the regulation governing the administrative hearing in question, violates the APA, the Chemical Test Refusal Law, and several regulations promulgated thereunder, 501 C.M.R. 2.52, 501 C.M.R. 9.05(6), and 801 C.M.R. 1.03. Where a facial challenge to regulations promulgated by a governmental agency is made, the standard of judicial review is “highly deferential,” because “a regulation ‘has the force of law and must be accorded all the deference due a statute.’ ” Cacicio v. Sec’y of Pub. Safety, 422 Mass. 764, 769 (1996), citing Borden, Inc. v. Comm’rofPub. Health, 388 Mass. 707, 723, cert, denied, 464 U.S. 936 (1983). A court may not “substitute [its] judgment as to the need for a regulation or the propriety of the means chosen to implement the statutory goals, so long as the regulation is rationally related to those goals.” Id., citing American Family Life Assurance Co. v. Comm’r of Ins., 388 Mass. 468, 477, cert, denied, 464 U.S. 850 (1983). Each argument is addressed below.
1. The Administrative Procedure Act (G.L.c. 30 A, §§10, 11)
Pursuant to G.L. 30A, §10, adjudicatory proceedings of administrative agencies “shall afford all parties an opportunity for full and fair hearing.” G.L.c. 30A, §10. A full and fair hearing includes, inter alia, the right to notice of the hearing, a reasonable opportunity to prepare and present evidence and argument, the right to call and examine witnesses, introduce exhibits, to cross-examine witnesses who testily, and, to submit rebuttal evidence. G.L.c. 30A, § 11 (l)-(3). At the conclusion of the hearing, “each agency decision shall be in writing or stated in the record . . . [and] shall be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessaiy to the decision . . .” G.L.c. 30A, §11(8). Wasserman argues that 540 C.M.R. 11.02 violates the provisions of the APA.[16] Each of Wasserman’s contentions fails.
First, Wasserman’s right to sufficient notice was not infringed by the immediacy of the hearing. The Chemical Test Refusal Law provides an operator with a hearing within fifteen days of her suspension in order to prevent any unnecessary loss of use of her license. G.L.c. 90, §24(l)(g). Hearings are held on a walk-in basis for the convenience of the operator who is thus able to determine when the hearing will be held. Id. Moreover, 540 C.M.R. 11.02(5)(c) permits the hearing officer to adjourn the hearing and thereafter obtain further evidence on the narrow issues presented for review in the hearing. Wasserman neither suggests what kind of notice would be proper nor states what evidence or argument she was not permitted to present because of the lack of notice. At her hearing, in fact, Wasserman was able to present five separate affidavits in support of her arguments and did not request an adjournment in order to gather and present additional evidence or argument. This Court finds, therefore, that immediacy of the hearing offered in 540 C.M.R. 11.02 is rationally related to the goals of Sections G.L.c. 30A, §§10, 11.
Second, Wasserman’s right to call and cross examine witnesses was not infringed by the requirement that all testimony be submitted in writing. See 540 C.M.R. 11.02(4). The APA requires that all evidence submitted be “made a part of the record in the proceeding.” G.L.c. 30A, §11(4). Although the agency must make the record available to the parties, whether in written form or otherwise, the agency may require the parties to pay the reasonable cost of such records. G.L.c. 30A, §11(6). Accordingly, 540 C.M.R. 11.02(4) states that “[i]t shall be the responsibility of the operator to include any and all relevant testimony in written form for the record.” The RMV provides forms which the witnesses may use to transcribe their testi *305 mony, reasonable assistance to facilitate such transcription if it is requested by the operator, and allows the operator to have the proceeding transcribed or recorded at her own expense. Id.
The requirement that any testimony be submitted in writing to the agency to be made a part of the record does not infringe on an operator’s ability to call and cross examine witnesses. Indeed, Wasserman had the right to subpoena any witnesses, including the police officers, that she believed necessary to the determination fo the issues presented, but chose hot to do so. 540 C.M.R. 9.05(6). In this Court’s view, the fact that providing witness testimony in writing is more difficult does not materially affect her right to call and cross examine witnesses. As previously stated, at the hearing the scope of the inquiry is narrow. The requirement that all evidence be made a part of the record in written form serves the important goal of preserving all issues presented to the hearing officer for appeal. This Court finds, therefore, that 540 C.M.R. 11.02 is rationally related to the goals of Sections G.L.c. 30A, §§10, 11.
2. The Chemical Test Refusal Law and 501 C.M.R. 2.52
The Chemical Test Refusal Law, G.L.c. 90, §24(l)(f), states that “[w]hoever operates a motor vehicle upon any way . . . shall be deemed to have consented to submit to a [breath test] in the event that [she] is arrested for [an OUI] . . .” The law states that “if the [operator] refuses to submit to a [breath test], after having been informed that [her] license . . . shall be suspended for at least a period of one hundred and twenty days ... , no such test. . . shall be made and [she] shall have [her] license . . . suspended.” Id. (emphasis added). 501 C.M.R. 2.52 also instructs that the operator be informed of the consequences of refusal. “If after being advised of. . . her rights and the consequences for refusing to take a breath test, a defendant refuses to submit to a breath test, none shall be given and the officer before whom the refusal was made shall immediately notify the [RMV] of the refusal.” Id. (emphasis added). Wasserman argues that 540 C.M.R. 11.02 violates the Chemical Test Refusal Law and 501 C.M.R. 2.52 because it does not require the hearing officer to specifically find that Wasserman was first advised of her rights and the consequences of refusal prior to refusing to take a breath test.
Pursuant to 540 C.M.R. 11.02, if a hearing officer finds that the Report of Refusal meets the statutory requirements, the burden shifts to the operator to disprove one of the following three facts: (1) the police had “reasonable grounds to believe that [she] had been operating a motor vehicle while under the influence of intoxicating liquor . . . ,” (2) she was placed under arrested, and (3) she refused to submit to a breath test. Whether or not the operator was first informed of her rights and the consequences of refusal is not considered. Nor does the explicit language of the Chemical Test Refusal Law require the Report of Refusal to include this information. It states that the Report of Refusal “shall set forth the grounds for the officer’s belief that the [operator] had been operating a motor vehicle on any such way or place while under the influence of intoxicating liquor, and shall state that [she] refused to submit to a [breath test] when requested by such police officer to do so, such refusal having been witnessed by another person other than the [operator]. Each report shall identify which police officer requested said chemical test or analysis, and the other person witnessing said refusal.” G.L.c. 90, §24(l)(f).
“A regulation is invalid if it conflicts with the authorizing statute.” Morris v. Commonwealth, 412 Mass. 861, 864 (1992). Insofar as 501 C.M.R. 2.52 requires the hearing officer to specifically find that the operator was first informed of her rights and the consequences of refusal, it conflicts with G.L.c. 90, §24(l)(f).
The Chemical Test Refusal Law, however, is an implied consent law. See Mackey, 443 U.S. at 3; G.L.c. 90, §24(l)(f). An operator’s voluntary, knowing, and intelligent consent is not sought, it is presumed. Id. Its purpose is non-retributive; it merely seeks to protect public safety through prompt removal of drunk drivers from the public roads. See Leduc v. Commonwealth, 421 Mass. 433, 435-36 (1995), certiorari denied, 519 U.S. 827 (1995). Requiring the hearing officer to specifically find that the operator was first informed of both her rights and the consequences of refusal would contradict the plain language of the statute which contains no such requirement. Further, it would read into the statute a voluntary, knowing, and intelligent refusal standard that does not exist. The Court finds, therefore, that 540 C.M.R. 11.02 is rationally related to the goals of the Chemical Test Refusal Law.
3. 501 C.M.R. 9.05(6)
Wasserman argues that 540 C.M.R. 11.02 violates 540 C.M.R. 9.05(6). 540 C.M.R. 9.05(6), which is applicable to discretionary hearings involving the suspension, revocation or reinstatement of any license to operate a motor vehicle, governs testimonial evidence for these types of hearings. 540 C.M.R. 9.01. It states that “[t]he applicant shall have the right to present his or her own evidence and witnesses and to cross-examine those testifying against him or her. The applicant may, at least two business days prior to the hearing, contact the appropriate Registry official to ascertain the identities of any witnesses the Registry plans to call to testify. Subpoenas may be issued pursuant to the provisions of the [APA].” 540 C.M.R. 9.05(6).
Wasserman argues that 540 C.M.R. 11.02 is inconsistent with, or outright contradictory to 540 C.M.R. 9.05(6) because the former confines the RMV hearing to RMV forms obtained at the hearing and thereafter confines appeals to the forms submitted at the hearing. The plain language of 540 C.M.R. 11.02, however, *306 in no way limits the evidence to RMV forms, it only requires that any testimony or evidence submitted by the operator be in writing to become part of the record of the proceedings. 540 C.M.R. 11.02(4). The RMV will either provide forms for the operator to use in submitting this written testimony or the operator may, at her own expense, have the proceeding transcribed or recorded by a court reporter. Id. 540 C.M.R. 11.02 then describes how it will address the Report of Refusal Form submitted by the police officers, it does not confíne review to those forms. 540 C.M.R. 11.02(5)(a)-(b). Finally, 540 C.M.R. 11.02 does not limit appeal to the Refusal Form. In fact, it makes no mention of appeals at all. The Court finds, therefore, that 540 C.M.R. 11.02 is not inconsistent with or contradictory to the goals of 501 C.M.R. 9.05(6).
4. 801 C.M.R. 1.03
Wasserman next argues that the hearing officer violated 801 C.M.R. 1.03(6) (a)(1)(a) by receiving documents from the police, ex parte, following the hearing and by thereafter relying on those documents in making his decision. This argument was not presented in Wasserman’s complaint and is therefore not properly before the court. Nonetheless, the statutory scheme clearly permits the hearing officer’s receipt of these documents. 801 C.M.R. 1.03(6)(a)(2) permits the hearing officer, upon his own motion, to “accept or require the submission of additional evidence of the substance of a communication prohibited by 801 C.M.R. 1.03(6).” Moreover, 540 C.M.R. 11.02(5)(c) states that the hearing officer “shall have leave to adjourn the hearing at any point to obtain further evidence.” The operator is thereafter allowed to “review such additional evidence and submit such counter affidavits or other rebuttal evidence as he or she desires, before the hearings officer concludes the hearing.” IdL The hearing officer’s receipt of materials from the Revere Police Department after the hearing was adjourned was proper. Therefore, the Court finds that 540 C.M.R. 11.02 is not inconsistent with or contradictoxy to the goals of 801 C.M.R. 1.03.
As a result of the previous careful review, the Court finds no substantial errors of law with respect to the relationship between 540 C.M.R. 11.02 and the APA, the Chemical Test Refusal Law, 501 C.M.R. 2.52, 501 C.M.R. 9.05(6), and 801 C.M.R. 1.03. None are apparent on the record and none that are argued by the plaintiff can be said to adversely affect her material rights. Defendant’s Motion for Judgment on the Pleadings on Count II and III as to these claims of the plaintiffs Complaint is, therefore, allowed.
B. The Administrative Procedure Act (G.L.c. 30A, §11(8))
Wasserman challenges the validity of the hearing officer’s decision under G.L.c. 30A, §11(8). The APA states that at the conclusion of the hearing “each agency decision shall be in writing or stated in the record . . . [and] shall be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision ...” Id. Wasserman argues that the hearing officer failed to accompany its decision with a statement of reasons for the decision, including each issue of fact and law.
In this Court’s opinion, the hearing officer’s decision did include a determination of each issue of fact and law necessary to the decision. The hearing officer concluded, citing the evidence upon which he relied, that the police officers had reasonable grounds to believe that Wasserman was operating a motor vehicle under the influence of intoxicating liquor, that she was placed under arrest, and that she refused to submit to a breath test. Pursuant to the Chemical Test Refusal Law, these are the only factual determinations that the hearing officer is required to make. G.L.c. 90, §24(l)(f).
Moreover, contrary to Wasserman’s assertions, the hearing officer further addressed each of her arguments presented at the hearing, (1) that she did not knowingly refuse the test, (2) that the police interfered with her right to counsel by not waiting until her attorney arrived before asking her to take the breath test, and (3) that the signatures on the Report of Refusal Form B had been placed incorrectly according to which officer witnessed the refusal and to which officer the refusal was made. Therefore, the Court finds no substantial errors of law with respect to the statutorily required elements of the hearing officer’s decision that are apparent on the record and adversely affect the material rights of the plaintiff.
Defendant’s Motion for Judgment on the Pleadings on plaintiffs Count II as to this claim of plaintiffs Complaint is therefore allowed.
IV. The Evidence Supporting the Hearing Officer’s Decision
Finally, Wasserman directly challenges the hearing officer’s decision. The appropriate standard of review for a decision of an agency in an administrative proceeding that is quasi-judicial in nature is determined according to “the nature of the action sought to be reviewed.” Cepulonis v. Comm’r of Corn, 15 Mass.App.Ct. 292, 293 (1983). See also Fire Chief of East Bridgewater, 47 Mass.App.Ct. at 69. In this case, G.L.c. 90, §24(1) (g) directs that the findings made pursuant to the RMVs administrative hearing shall be reversed if the reviewing court finds that the RMV “exceeded its constitutional or statutory authority, made an erroneous interpretation of law, acted in an arbitrary or capricious manner, or made a determination which is unsupported by the evidence in the record.”
As the District Court Judge (Brant, J.) noted, this standard is analogous to that performed under a “substantial evidence” test pursuant to the APA, which also governs adjudicatory hearings by administrative agencies. G.L. 30A, §14(7)(e). See generally Khodaverdian v. Dept, of Employment & Training, 39 Mass.App.Ct. 414, 414-15 (1995). This Court will *307 therefore review the findings below to determine whether they were supported by “substantial evidence on the record as a whole.” See Fire Chief of East Bridgewater, 47 Mass.App.Ct. at 69-70, citing Georgetown v. Essex County RetirementBd., 29 Mass.App.Ct. 272, 274 (1990). It will not disturb the findings below unless substantial errors of law, which are apparent on the record, have adversely affected the material rights of the plaintiff. Fire Chief of East Bridgewater, 47 Mass.App.Ct. at 70.
Wasserman argues that the hearing officer’s decision is not supported by substantial evidence on the record as a whole because (1) she did not give a voluntary, knowing, and intelligent refusal to take the breath test, (2) that her right to counsel was infringed when the police did not wait for her attorney to arrive prior to asking her to take the breath test, (3) the Report of Refusal Form A was not used by the police officers as it should have been, (4) the Report of Refusal Form B was completed incorrectly, and (5) the hearing officer failed to make explicit findings with respect to each of the aforementioned issues. As previously discussed, no voluntary, knowing, and intelligent waiver standard applies in the present case and Wasserman did not have a right to counsel prior to deciding whether to take or refuse a breath test. See 11(A) and 11(B)(1) of the discussion section supra Wasserman’s other arguments are addressed below.
A. Report of Refusal Form A & B
In essence, Wasserman states that there exists a Report of Refusal Form A which the police officers were required to complete.[17] She also states that the signatures on the Report of Refusal Form B were placed incorrectly as to which officer witnessed the refusal and as to which officer the refusal was made. Together, Wasserman argues that the evidence precludes the hearing officer from upholding the suspension of her license. This Court disagrees. The absence of the Report of Refusal Form A and the minor error on the Report of Refusal Form B does not diminish the substantial evidence upon which the hearing officer’s decision was made.
“ ‘Substantial evidence’ means such evidence as a reasonable mind might accept as adequate to support a conclusion,” not proof beyond a reasonable doubt. G.L.c. 30A, §1(6). This Court finds that it was reasonable for the hearing officer to rely on the following evidence to support the conclusion that the arresting officers had reason to believe she was driving while under the influence of intoxicating liquor and that she refused a breath test. First, the hearing officer received the information contained in Form B that indicated Wasserman had been pulled over for weaving while driving, that she was unsteady on her feet, slurred her speech, smelled of alcohol, and was unable to perform the field sobriety tests as directed. Second, the hearing officer received the information contained in Form B that she was informed of her rights and the consequences of refusal, asked to perform a breath test, and refused. Third, the hearing officer received the affidavit from Wasserman’s physician which confirmed that her medication could cause her to experience disorientation and loss of voluntary muscular control, involuntary muscular movement in the eyes, short-term memory loss, the inability to properly record and recall events.[18],[19]
B. Explicit Findings in the Hearing Officer’s Decision
Wasserman’s argument that the hearing officer’s decision is unsupported by substantial evidence because of his failure to make explicit findings with respect to the aforementioned claims — (1) the absence of a voluntary, knowing, and intelligent refusal to take the breath test, (2) the infringement of her right to counsel, (3) the failure of the police officers to use Report of Refusal Form A, and (4) the inaccuracies in Report of Refusal Form B — is without merit. The hearing officer’s decision begins by summarizing each of Wasserman’s arguments and addresses each in turn.
First, the hearing officer specifically finds that it would be “foolish and not in the interest of public safely to overturn a suspension if one was so intoxicated at the time of his/her arrest that he/she could not recall being offered the breathalyzer test or whether he/she refused such test.” Second, the hearing officer held, citing to and relying upon Commonwealthv. Brazelton, 404Mass. 783 (1989), that “police officers did not have to wait for [Wasserman’s] attorney to appear before asking [her] to take a breathalyzer test.” Third, the hearing officer specifically discusses the alleged inaccuracies in the Report of Refusal Form B. Citing primarily to Commonwealth v. Kelley, 39 Mass.App.Ct. 448 (1995), the hearing officer concludes that while Wasserman is free to argue that “deviation from meticulous compliance” should result in a ruling in her favor, such minor inaccuracies which do not seriously jeopardize the integrity of the procedure do not so require. Wasserman is correct in stating that the hearing officer’s decision does not mention the arresting officers’ failure to use Report of Refusal Form A. There is no evidence in the record, however, that this argument was presented before the hearing officer.
This Court therefore finds after a review of the record that there are no substantial errors of law with respect to the hearing officer’s decision which adversely affect the material rights of the plaintiff. This Court further finds that the hearing officer’s decision was supported by substantial evidence, as confirmed by Judge Brant of the District Court. Defendant’s Motion for Judgment on the Pleadings on plaintiffs Count IIG and H and Count IIIB and C of her Complaint is allowed.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s Motion for Judgment on the Pleadings on all of plaintiffs Counts is ALLOWED.

It is unclear from her pleadings and oral presentation whether (1) it is Wasserman’s position that she was simply never asked to take a breath test or (2) it is her position that it should be found, as a matter of fact, that she was not aware if she was asked because she was under the influence of prescription medication, discussed below, that prevented her from voluntarily, knowingly, and intelligently understanding her options and rationally choosing to refuse to take the breath test.

The [RMV] shall provide forms for witnesses to transcribe their testimony to submit it for inclusion in the record, and shall provide reasonable assistance to facilitate such transcription, should it be requested by the operator.” 540 C.M.R. 11.02(4). “The [RMV] shall also allow the operator to •have the proceeding transcribed or recorded by a court reporter, at the operator’s own expense, if... she so chooses.” Id, See also 540 C.M.R. 9.05(3) (“The applicant may record the hearing at . . . her own expense by any means . . . she chooses that will not substantially interfere with the proceedings”).

Wasserman argues, for the first time in her reply to the defendant’s Motion for Judgment on the Pleadings, that the hearing officer violated 801 C.M.R. 1.03(6)(a)(l)(a) by receiving ex parte documents from the police after the hearing and relying upon those documents in making his decision. For the resolution of this issue, please see 111(A)(4) of the discussion section infra.

Wasserman argues that G.L.c. 90, §24(l)(f)(l) requires that all forms promulgated by the RMV be used by the police during a suspension for refusal to take a breath test. The relevant language states: “The police officer before whom such refusal was made shall immediately prepare a report of such refusal. Each such report shall be made in a format approved by the registrar and shall be made .under the penalties of perjury by the police officer before whom such report was made.” Wasserman argues that because the RMV has promulgated Form A for use prior to the request of the operator to take a breath test and prior to the suspension of the operator’s license, failure to do so results in a violation of the statute. It is not clear, however, whether G.L.c. 90, §24(l)(f)(l) requires the use of Form A. The plain language of the statute requires an officer to make a report of the refusal after the operator is asked to take a breath test. The statute discusses the use of a single refusal report, not multiple reports.

Contraiy to Wasserman’s assertions, it is my view that the resolution of her criminal case in her favor is entirely irrelevant to the review of the civil administrative proceedings before this Court.

The RMV argues that Wasserman’s claims are moot because her license was reinstated on September 17, 2001. The Court disagrees. A plaintiffs claims are mooted only if she ceases to have a personal stake in the outcome. See Blake v. Massachusetts Parole Bd,, 369 Mass. 701, 703 (1976). Here, Wasserman seeks equitable relief against the RMV in the form of alteration of her records at the RMV. Insofar as the RMV refuses to provide the relief requested, an actual controversy exists between the parties.

Wasserman presents constitutional claims in her brief which were argued below, but are not included in her Complaint. In exercise of extreme caution, the Court reviews those claims herein.

This argument is made in the alternative. Wasserman maintains, in the first instance, that she was never asked to take a breath test. See n. 1, supra

In general, Massachusetts courts have held that “the due process provisions of the Massachusetts Constitution . . . afford protection comparable to that supplied by the Fourteenth Amendment [to the United States Constitution].” Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 270 (1992), quoting Boston v. Keene Corp., 406 Mass. 301, 308 n.8 (1989). Because the plaintiff has not made a claim that Article 12 provides any greater protection than the Fourteenth Amendment under the circumstances presented, this Court treats the two provisions as equivalent.

Indeed, in her briefs Wasserman fails to articulate what fundamental constitutional right is impeded by the statutory scheme set out in the Chemical Test Refusal Law.

Although Wasserman has no constitutional right to be confronted with evidence against her, the Chemical Test Refusal Law, and parallel regulation, provides her with some statutory rights with respect to the hearing, as discussed infra. G.L.c. 90, §24(f)(l).

Wasserman argues that Brazelton stands for the proposition that police interference with a defendant’s constitutional right to consult his attorney prior to deciding whether to take a breath test merits sanction. See plaintiffs Memo on Merits of Claims of Unlawful License Suspension, pp. 5-6 (July 23, 2001). Wasserman, however, mischaracterizes the Court’s findings. The Court explicitly held that no right existed, constitutional or otherwise, to consult your attorney prior to deciding whether to take a breath test. Brazelton, 404 Mass, at 785.

In 1979, the United States Supreme Court upheld the constitutionality of the Massachusetts Implied Consent Law, now referred to as the Chemical Test Refusal Law, in Mackey v. Montrym, 433 U.S. 1 (1979). In Mackey, a Massachusetts driver sought a declaration that the automatic suspension of his license for his refusal to submit to a breath test following his arrest for an OUI pursuant to G.L.c. 90, §24, without a pre-suspension evidentiary hearing, violated his right to procedural due process under the Fourteenth Amendment. Mackey, 433 U.S. at 3-4. Applying the balancing test set out in Matthews v. Eldridge, 424 U.S. 319, 335 (1976), the Court found that no such pre-suspension process was due, particularly in light of the availability of an evidentiary hearing post-suspension. Mackey, 433 U.S. at 11, 15-16. Today, this Court examines the adequacy of the process afforded in the post-suspension hearing under the current version of that law.

Wasserman disputes these facts. See n.l, supra

In general, Massachusetts courts treat equal protection claims under the Massachusetts Declaration of Rights identically to claims under the Fourteenth Amendment. See Chebacco Liquor Mart, Inc. v. Alcoholic Beverages Control Comm'n, 429 Mass. 721, 723 (1999); Dickerson v. Attorney General, 396 Mass. 740, 743 (1986); Doyle v. Dep't of Indus. Accidents, 50 Mass.App.Ct. 42, 45 (2000).

In Count II E of Wasserman’s Complaint, she also argues that 540 C.M.R. 11.02 violates G.L.c. 30A, §8 because it does not require the police officers to provide both Report of Refusal Form A and B for the hearing officer to uphold the suspension. Wasserman argues that the RMV “is bound by the forms it promulgated, including Form A, pursuant to [G.L.c. 30A, §8].” Section 8 of c. 30A, however, deals with the availabilify of advisory rulings by an administrative agency. Count IIE is therefore not cognizable. Defendant’s Motion for Judgment on the Pleadings on plaintiffs Count IIE is allowed.

See n.4 supra.

 There is no allegation or indication in the pleadings, the record, or elsewhere that the hearing officer improperly afforded Form B alone prima facie status pursuant to 540 C.M.R. 11.02.

Contraiy to Wasserman’s contention, consideration of Dr. Barrett’s affidavit makes it more reasonable, rather than less, that she had been driving under the influence and refused the breath test given that the symptoms produced by the medication are also present in one who is veiy intoxicated.