MacDonald, D. Lloyd, J.
Before the Court is a motion for judgment on the pleadings brought by the petitioner Registry of Motor Vehicles (the “Registry” or the “Registrar”) on its petition for certiorari review pursuant to G.L.c. 249, §4. The action at issue is the decision of the Concord Division of the District Court Department of the Trial Court (the “District Court”) reversing the Registrar’s three-year suspension of the license of the respondent Margaret Stevens (“Stevens”) for Stevens’ refusal to take a breathalyzer test after her arrest for driving under the influence. For the reasons stated below, the Court ALLOWS the petition and reverses the District Court.
Pertinent Facts
In the early morning of January 8, 2006, while operating a motor vehicle on a public way in Lincoln, Stevens was stopped by an officer of the Lincoln Police Department. At the time, Stevens was 20 years old. After failing three field sobriety tests, Stevens was arrested for operating under the influence and transported to the police station.
Although there is conflicting evidence as to the details of what occurred at the station, there is no dispute that Stevens was provided with a so-called “Statutory Rights Form” issued pursuant to G.L.c. 90, §24(1)(f)(1). The Statutory Rights Form recited Stevens’ rights to a doctor’s medical examination and to a telephone call to family, friends or counsel.
The form also contained a “request” that Stevens “submit to a chemical test to determine [her] blood alcohol concentration.” The latter is commonly referred to as a “breathalyzer test.” The form further notified Stevens that “[i]f [she] refuse[d] this test, [her] license or right to operate in Massachusetts shall be suspended for at least a period of 180 days or up to life for such refusal.” The text of the form continued: “The suspension if you take the test and fail it is 30 days. Drivers under age 21 will face an additional suspension pursuant to General Laws Chapter 90, Section 24P of 180 days to 1 year.”
Stevens availed herself of the opportunity to make a phone call and called her mother. Again, while the accounts vary as to what occurred after Stevens contacted her mother, there is no dispute that Stevens did in fact speak to her mother and that her mother herself spoke to the arresting officer. It is also not contested that her mother was provided a copy of the Statutory Rights Form when she arrived at the station to pick up Stevens. And it is also not in dispute that after speaking to her mother, Stevens refused to take the breathalyzer test.
As of the date of the incident, G.L.c. 90, §24 had been recently and significantly revised in a legislative package referred to as “Melanie’s Law.” For background see, e.g., K. Eschbacher, “Crackdown on the Roads: Melanie’s Law,” Patriot Ledger, October 29, 2005 at p. 1. Among the changes introduced by Melanie’s Law was that if a person under age 21 refused to take the breathalyzer test after notice of the range of suspensions that could be imposed for doing so, an automatic three-year license suspension was imposed.[1]
Within a week, the Registry revoked Stevens’ license for the mandatory three-year period.
Stevens then exercised her statutory right to a hearing at the Registry to contest the suspension. G.L.c. 90, §24(1)(g). She and her mother submitted affidavits to the hearing officer.
The basis of her appeal was that Stevens alleged that she had been misled by the arresting officer as to the consequences of a refusal to take the breathalyzer. Stevens said that the officer told her that if she refused to take the test, the maximum period her license would be suspended would be one year. Her affidavit stated, “While I was speaking to [my mother on the phone from the station] the police officer said, "Make sure she understands you could lose your license anywhere from 180 days to ayear [ifyou were to refuse the test]. I asked him if he would like to talk to her, handed him the phone and he told her the same."
Stevens’ mother’s affidavit confirmed Stevens’ account. Her affidavit stated: “The police officer came on the phone and explained that Margaret could lose her *609 license for 6 months to a year if she didn’t take the test.”
As noted above, Stevens refused the breathalyzer test. As to her reasons, she stated in her affidavit, “My decision to not take the breathalyzer was based on the understanding that I would lose my license for at most a year. I am in school in New York where I do not use a car, so losing my license for a year did not seem like a big hardship. However, losing my license for three years would be.” If she had been informed of the prospect of the three-year suspension, Stevens said in her affidavit, and so testified at the Registry hearing, she “would have definitely taken the breathalyzer.”
At the Registry hearing, the hearing officer had before him the “Report of Chemical Test Refusal” on a form authorized by the Registry pursuant to G.L.c. 90, §24(1)(f). He also had copies of the incident reports prepared by the police officers involved in Stevens’ arrest and booking. And he had Stevens’ and her mother’s affidavits. Stevens and her mother were present at the hearing. Stevens did not subpoena the police officers to the hearing, as was her right. 540 C.M.R. 9.05(6); 540 C.M.R. 11.02(4); Wasserman v. Registry of Motor Vehicles, Suffolk Superior Court Civil Action No. 03-03341, 2004 WL 2049771, at *10 (Sept. 7, 2003) (Cratsley, J.) [18 Mass. L. Rptr. 259).
Pursuant to G.L.c. 90, §24(l)(g), the hearing officer was required to address three issues:
(i) did the police officer have reasonable grounds to believe that such person had been operating a motor vehicle while under the influence of intoxicating liquor
(ii) was such person placed under arrest, and
(iii) did such person refuse to submit to such test or analysis.
After considering the evidence, the hearing officer concluded that Stevens had not met her appellate burden of proof on any one of them and let the suspension stand. He communicated his decision first by letter and then by a detailed “Chemical Test Refusal Hearing Report” pursuant to 540 Code Mass. Regs. 11.00.
With regard to the specific issue of Stevens’ refusal of the breathalyzer test, in the section of the hearing officer’s report where the printed question was posed, “Did the defendant refuse to submit to a Chemical Test?” the hearing officer entered, “Yes.” As his reasons, the hearing officer recorded that Stevens had been given the Statutory Rights Form, that the form contained a verbatim recitation of the advice required by the statute to the effect that a refusal of the test would cause Stevens’ license to be “suspended for a period of at least 180 days up to a lifetime,” and that by her own admission Stevens refused the test. The hearing officer also noted that the form recited that an “additional" suspension of 180 days to one year would occur on Stevens’ refusal on account of her being under 21, citing G.L.c. 90, §24P (emphasis in the original hearing officer’s decision).
As to Stevens’ and her mother’s versions of events, the hearing officer made the following determination: “Based on [Stevens’] condition that evening, I cannot give her recollections, nor her mother’s recollection of an obviously distressing phone call, more weight than a crystal clear written form that [Stevens] admits being given and asked to sign.” The hearing officer concluded, “Thus, I find [Stevens] was properly advised [of the consequences of refusing the breathalizer], and clearly refused.”
Stevens then exercised her right to appeal the Registry’s action to the District Court pursuant to G.L.c. 90, §24(1)(g). As provided by statute, review by the District Court was “on the record established at the hearing before the registrar.” G.L.c. 90, §24(1)(g). Thus, no additional witnesses or evidence were introduced.
Concluding that Stevens had not “refused” the breathalyzer, the District Court reversed the Registry’s determination. The District Court ruled that the hearing officer’s decision was erroneous as a matter of law, and was arbitrary and capricious.
The District Court judge made several specific findings in support of his conclusion. First, he found that the “[h]earing officer erred in not making an independent factual determination of refusal.” Second, the court stated, “Plaintiff was clearly misinformed of the 3 year minimum suspension. Ignorance of the consequences would not justify refusal but active (albeit innocent) misstatement vitiates her ‘refusal.’ ” The judge reversed the hearing officer’s decision, but allowed the one-year suspension imposed in Stevens’ companion criminal case to stand.[2]
The Registry then filed the present petition, seeking certiorari review of the District Court’s action under G.L.c. 249, §4.
Discussion
Scope of Review
An action for certiorari is only available “to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal.” G.L.c. 249, §4.
On certiorari review “[a] court will correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff. In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public.” Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth, 430 Mass. 783, 790-91 (2000), quoting Carney v. Springfield, 403 Mass. 604, 605 (1988). “The court’s power on certiorari is not exercised to remedy mere technical errors that have not resulted in manifest injustice.” *610 Mass. Prisoners Ass’n. Political Action Comm. v. Acting Governor, 435 Mass. 811, 824 (2002).
Therefore, the question before this Court is whether, on the basis of the record, the Concord District Court substantially erred in a way that materially affected the rights of the Registrar or the public interest. Cf. Massachusetts Bay Transp. Auth., 430 Mass. at 791.[3]
To address this question it is necessary to consider the limitations that apply to the District Court’s review of the Registrar’s decision. By statute, the District Court is authorized to reverse the Registry’s final determination only if “the department exceeded its constitutional or statutory authority, made an erroneous interpretation of law, acted in an arbitrary and capricious manner or made a determination which is unsupported by evidence in the record.” G.L.c. 90, §24(1)(g).
As such, the District Court’s review was to be by the familiar “substantial evidence” standard routinely employed by the courts’ review of administrative agency decisions. See Wasserman, supra, at *15.
“Substantial evidence” means such evidence as a reasonable mind might accept as adequate to support a conclusion. G.L.c. 30A, §1(6). When applying the substantial evidence standard, the Court considers the record as a whole. The Black Rose, Inc. v. City of Boston, 433 Mass. 501, 503 (2001). “(T]he substantial evidence test accords an appropriate degree of judicial deference to administrative decisions, ensuring that an agency’s judgment on questions of fact will enjoy the benefit of the doubt in close cases, but requiring reversal by a reviewing court if the cumulative weight of the evidence tends substantially toward opposite inferences.” Cobble v. Comm’r of the Dept. of Social Services, 430 Mass. 385, 391 (1999).
In applying the substantial evidence standard, a court “may not displace . . . [the hearing officer’s] choices even though the court would justifiably have made a different choice had the matter been before it de novo.” Cepulonis v. Comm’r of Correction, 15 Mass.App.Ct. 292, 295 (1983), quoting Labor Relations Comm. v. University Hosp., Inc., 359 Mass. 516, 521 (1971). “In deciding whether agency findings have satisfied this standard, [the court does] not decide questions of credibility or weigh conflicting evidentiary versions[.]” Silvia v. Securities Division, 61 Mass.App.Ct. 350, 358 (2004).
Thus, the District Court in exercising its appellate function pursuant to G.L.c. 90, §24(1)(g) was not free to substitute its judgment as to matters within the bounds of the Registrar’s lawful discretionary authority. See Town of Falmouth v. Civil Service Commission, 61 Mass.App.Ct. 796, 800 (2004).
The Merits
Viewed in the above framework, it is apparent that the District Court committed a substantial error of law, which error adversely affected a material right of the Registry and the substantial interests of the general public. Thus, the certiorari remedy is appropriate, and the District Court’s decision must be reversed.
Stated most succinctly, the issue before the hearing officer was whether Stevens and her mother had been so misled by the arresting police officer with respect to the consequences of her refusal to take the chemical test that Stevens’ refusal was neither voluntary nor knowing. As to that issue, the hearing officer was faced with a straight credibility judgment: Did he believe Stevens and her mother or did he believe the account of the police as memorialized in the reports appearing in the record?
The Statutory Rights Form that Stevens acknowledged receiving contained the statutory notice that the sanction for refusing to submit to the chemical test was suspension of her license “for a period of at least 180 days and up to a lifetime loss.” The statute is explicit to the effect that if such notice is given and the arrested person refuses the test, his or her license “shall be suspended” (emphasis added). G.L.c. 90, §24(f)(1).
The hearing officer’s decision was unambiguous in rejecting as not credible Stevens’ and her mother’s accounts that, notwithstanding the text of the Statutory Rights Form, the Lincoln Police assured them that the maximum period of Stevens’ suspension would be only one year, and that Stevens refused the test based on those assurances.
The record provides substantial support for the hearing officer’s rejection of Stevens’ and her mother’s evidence. He noted Stevens’ alcohol impaired condition at the time of the events at issue, and the “distressing” circumstance in which her mother then found herself.
As to her condition, Stevens was reported by three separate police officers as having been substantially impaired at the time of her arrest, due to apparent intoxication. Not only had she been observed to be driving erratically, but, once stopped, Stevens badly failed three separate field sobriety tests. For example, asked to recite the alphabet, the arresting officer reported that, “her speech was too slurred to understand her. The letters made no sense as she went along.” During the “One Leg Stand” test, Stevens fell off balance and had to be grabbed by the officer to prevent her from falling to the ground. Another officer who was present at her arrest and booking described Stevens as “swaying while standing still.” After she was fingerprinted and directed to the station cell, the same officer reported that she literally walked into a station wall: “The impact caused Ms. Stevens to lose her balance causing her to take several steps backward.”
Meanwhile, in her affidavit, Stevens’ mother reported to the hearing officer that although Stevens was “very upset” at the station, she “was otherwise perfectly coherent.”
*611 It was the duty of the hearing officer to choose between these competing accounts as to whether Stevens had been materially misinformed about the consequences of her refusal to take the breathalyzer test. He did so, adversely to Stevens.
The core finding of the District Court, however, was that Stevens “was clearly misinformed.” The conclusion is inescapable that in reaching this conclusion, the District Court substituted its judgment for that of the hearing officer as to the central factual issue. To do so was an error of law.
The District Court also found that the hearing officer committed error in failing to “mak[e] an independent factual determination of refusal.” It is not clear from the District Court’s judgment what the purported error was. G.L.c. 90 and the pertinent regulations are silent as to a hearing officer’s obligation to make such a determination. To the contrary, G.L.c. 90, §24(f)( 1) explicitly provides that “[t]he report [prepared by the police of the refusal] shall constitute prima facie evidence of the facts set forth therein at any administrative hearing regarding the suspension specified in this section,”[4] For these purposes, the fact that the report may have been contradicted by Stevens’ and her mother’s statements is of no consequence, because “even in the presence of contradictory evidence . . . the prima facie evidence is sufficient to sustain the proposition to which it is applicable.” Case of Scheffer, 419 Mass. 251, 259 (1994). See also M. Brodin & M. Avery, Handbook of Massachusetts Evidence, §3.5.3, at 84 (2007).
Nevertheless, even if the requirement for such an “independent” finding were read into G.L.c. 90, the hearing officer’s decision includes such a finding. The hearing officer’s report of decision recited the evidence from the police reports; it noted the lack of credibility of Stevens’ and her mother’s contrary statements, and then the decision concluded, ‘Thus, I find [Stevens] was properly advised, and clearly refused.”
The District Court’s conclusion that the hearing officer did not make an independent finding was without an evidentiary basis in the record.
Finally, the decision of the District Court caused a manifest injustice to the Registrar and a material adverse impact on the public interest.
The Registry is mandated to enforce the Commonwealth’s statutes and regulations concerning drunk driving. See Wasserman, supra, at *2-*5. The provision at issue here—namely, the mandatory three-year license suspension of a person under 21 arrested for drunk driving who refuses the breathalyzer—was part of Melanie’s Law. As noted earlier, Melanie’s Law, enacted in October 2005, was a comprehensive revision of the laws relating to drunk driving. Its statutory purpose was to better protect the public through stricter penalties, restrictions, and sanctions imposed on persons suspected or convicted of drunk driving. One means of doing so was the mandatory three-year license suspension for persons under 21 who refused the statutorily prescribed chemical test.
The District Court’s ruling to reverse the Registrar’s decision frustrated the explicit public policy objective of Melanie’s Law as it related to the remedial measure directly targeting operators of vehicles who are under age 21. As a result, a manifest injustice to the Registrar was caused and the public interest was directly and adversely affected.
ORDER
The petitioner’s motion for judgment on the pleadings is ALLOWED. The March 10, 2006 judgment of the District Court is reversed, and the three-year suspension of the respondent Margaret Stevens’ license is reinstated, with credit for whatever time her license has been suspended to date.

The revised statute provided: “If the person arrested refuses to submit to such test or analysis, after having been informed that his license or permit to operate motor vehicles or right to operate motor vehicles in the commonwealth shall be suspended for a period of at least 180 days and up to a lifetime loss, for such refusal, no such test or analysis shall be made and he shall have his license or right to operate suspended in accordance with this paragraph for a period of 180 days; provided, however, that any person who is under the age of 21 years... shall have his license or right to operate suspended forthwith for a period of three years for such refusal . . .” Inasmuch as Stevens was arrested in January 2006, the Statutory Rights Form she was given by the Lincoln Police incorrectly stated the consequence of a person under 21 refusing the test. Rather than describing the mandatory three-year suspension provision, the form recited the pre-Melanie’s Law version of the statute. Before October 2005, if a person under 21 refused the test, a suspension of 180 days to one year was imposed in addition to the license suspension provisions that were applicable to adults. Stevens does not argue here that the fact that the Statutory Rights Form failed to include the post-Melanie’s Law three-year suspension provision made her refusal ineffective. Rather, as noted below, her argument rests on a claim that the police affirmatively misled her by stating that the maximum suspension would be a year if she refused the test.

Stevens’ criminal case was continued without a finding, and she was placed on probation for one year with a condition that she attend an alcohol awareness program in addition to her license being suspended for a year.

Both parties cited and referred the Court to Judge Cratsley’s comprehensive explication of the statutory and regulatory framework of OUI enforcement in the case of Wasserman v. Registy of Motor Vehicles, supra [18 Mass. L. Rptr. 259]. The Wasserman opinion was of great assistance to the Court.

Pursuant to 540 Code Mass. Regs. 11.02, the hearing officer is obliged to “examine the Report of Refusal ... to determine if it meets the requirements of [the] statute.” Upon making that determination, the regulation then provides that “the burden in on the operator to show that one of the following factual issues, as set forth in M.G.L.c. 90, §24(1)(g) [i.e . . . reasonable evidence of intoxication, fact of arrest and fact of refusal] was in the negative ...” Stevens does not claim that the Report of Refusal submitted by the Lincoln Police Department failed to meet the requirements of the statute, nor does she claim that the hearing officer failed to determine that it did.